## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO.  18-28 (EGS/GMH)** |
| | ) | |
| **JARRELL HARRIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DETENTION MEMORANDUM

This matter comes before the Court upon the application of the United States that Defendant, Jarrell Harris, be detained pending trial. Defendant has been charged by Indictment with five counts: (1) escape from custody in  violation of 18 U.S.C. § 751(a); (2) unlawful possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1); (3) unlawful possession of ammunition by a felon, also in violation of 18 U.S.C. § 922(g)(1); (4) recklessly fleeing from a law enforcement officer in violation of D.C. Code § 50-2201.05b(b)(2); and (5) assault with a dangerous weapon in violation of D.C. Code § 22-402.  The Court held a detention hearing on February 23, 2018. Upon consideration of the proffers and arguments of counsel and the entire record herein, the Court ordered Defendant held without bail pursuant to 18 U.S.C. § 3142(e). This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention."  18 U.S.C. § 3142(i)(1).  The findings of fact and statements of reasons in support of the Order of Detention follow.

**FINDINGS OF FACT**

A.      **Instant Offense**

At the detention hearing, the United States proceeded by proffer based on the Indictment. The defense offered no contrary evidence.  Accordingly, the Court makes the following findings of fact regarding the government's investigation:

On June 15, 2017, Defendant, who was incarcerated at the Hazelton Federal Correctional Institution in West Virginia, applied for a furlough transfer to a Residential Reentry Center, commonly known as halfway house.  Upon this application, Defendant signed an agreement stating that he understood the rules governing those placed in a Residential Reentry Center, including, "If I fail to remain within the extended limits of this confinement, it shall be deemed an escape."  On September 19, 2017, Defendant departed the Hazelton correctional facility for Hope Village, a Residential Reentry Center located in Washington, D.C.  Upon his arrival at Hope Village, Defendant signed an "Acknowledgement of Receipt of Resident Rules and Regulations, Terms and Conditions," otherwise known as "the handbook."

On November 5, 2017, Defendant was seen by a Hope Village supervisor getting into the driver's seat of a black two-door Mercedes CLK 300 convertible.  The supervisor said to Defendant, "You don't have permission to drive, didn't you read the handbook?" Defendant replied, "Fuck the handbook" and drove off.  Defendant eventually returned to Hope Village later that day.  However, three days after that incident, on November 8, 2017, Defendant walked into a supervisor's office carrying all his belongings and announced, "I'm out of here." Defendant then departed Hope Village.  After attempts to locate Defendant failed, a warrant was issued for his arrest on a charge of escape.

On January 11, 2018, police officers in Prince George's County, Maryland, attempted to

stop a black two-door Mercedes CLK 300 convertible driven by Defendant in connection with a robbery that had just occurred.  Defendant did not stop, and instead fled from the marked police cruisers, which had their emergency lights and sirens activated.  A twelve-minute car chase ensued, which was captured on the dashboard cameras of the Prince George's County Police Department ("PGPD").   Defendant drove recklessly and at a high rate of speed running several red lights, driving into oncoming traffic (crossing the double yellow line), turning left from the far right lane of traffic (nearly striking cars in the right turn lane), swerving in and out of traffic, making illegal U-turns, speeding through two parking lots, and running at least eight stop signs. Upon entering the 3100 block of Bruce Place in S.E. Washington, D.C., Defendant jumped out of the Mercedes and ran into the woods.  His car, however, remained in motion and struck a PGPD cruiser that an officer was exiting.  This caused the officer's knee to be injured when the Mercedes pinned him between the door and the body of his cruiser.

Officers, from both the PGPD and the D.C. Metropolitan Police Department ("MPD"), chased Defendant into the woods on foot.  The on-foot pursuit was captured on the body cameras of the MPD officers.  While fleeing, Defendant became entangled in the underbrush and fell. Officers then apprehended Defendant, handcuffed him, and helped him stand up.  On the ground directly under where Defendant was laying was a .357 revolver.  The revolver was loaded with six rounds of ammunition.

Defendant was then walked to the street, and while he was sitting on the curb, an MPD officer asked him for biographical information in order to fill out the arrest paperwork.   When the officer asked for his address, Defendant stated, "I ain't gonna lie to you, I ran away from the halfway house."  Prior to being placed in a transport vehicle, officers searched Defendant's pockets and discovered two revolver speed loaders containing an additional eleven rounds of

.357 ammo.[1]

### B.    Defendant's Criminal History

Defendant has a prior conviction for Assault with a Dangerous Weapon, in D.C. Superior Court case 2015-CFl-6671.  This conviction stemmed from an incident where Defendant pulled a gun on a construction worker and threatened to kill him.  Defendant pled guilty to that charge and was sentenced to three years in prison.  Defendant was serving the last portion of this three-year sentence at Hope Village when he allegedly absconded and committed the above offenses.

Additionally, Defendant has a 2013 conviction for unlawful possession of a firearm in D.C. Superior Court case number 2013-CF2-6643.  Defendant successfully finished probation in that matter in March 2015.  However, in April 2015—the very next month—he committed the assault on a construction worker discussed above.

Finally, PGPD have obtained warrants and lodged a detainer against Defendant for the offenses in Maryland.  On January 12, 2018, a warrant was issued for Defendant for First Degree Assault.  *See* Pretrial Services Report dated February 15, 2018 at 2.  On January 19, 2018, two warrants were issued for Defendant for Attempted First Degree Murder-Handgun and Armed Robbery.  *Id.*

### LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of  conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the

---

[1] A "speed loader" is a circular device that, when loaded with ammunition, allows the user to load a revolver all at one time instead of inserting each round individually.

4

[defendant] before trial." 18 U.S.C. § 3142(e). Thus, even if a defendant is not considered a flight risk, his or her danger to the community alone is sufficient reason to order pretrial detention. *United States v. Salerno*, 489 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2). Where the justification for detention is a finding that no set of conditions will assure the defendant's appearance in court, such a decision must be supported by a preponderance of the evidence. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). Here, the government is seeking the pretrial detention of Defendant both on the basis of danger to the community under 18 U.S.C. § 3142(f)(1)(E)—for possession or use of a firearm[2]—and on the grounds that Defendant is a flight risk under 18 U.S.C. § 3142 (f)(2)(A).

## ANALYSIS

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer considers: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

---

[2] While possession of a firearm in and of itself is not a crime of violence, *United States v. Singleton*, 182 F.3d 7, 16 (D.C. Cir. 1999), the Bail Reform Act specifically allows for the government to make a motion for pretrial detention for a case which involves "any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm[.]" 18 U.S.C. § 3142(f)(1)(E).

      1.      *Nature and Circumstances of the Charged Offense*

The first factor, the nature and circumstances of the charged offense, favors detention.  This factor asks the Court to consider "the nature and circumstances of the offense charged" as a general matter, but points especially to instances where "the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device."  18 U.S.C. § 3142(g)(1).

Defendant's charged offenses involve escape,  possession of  a loaded firearm, as well as recklessly fleeing from a law enforcement officer.   Defendant was open about his disregard of the rules of confinement at the halfway house and failed to remain on the premises as instructed.  In his escape from the halfway house, Defendant not only left, but openly announced that he was leaving to the on-duty supervisor.  Two months later, when PGPD attempted to stop Defendant in his car, he fled, leading the police on a high-speed chase through Maryland and the District of Columbia.  This behavior heightens the Court's concern that Defendant would be a flight risk and would not comply with any conditions if released.

Also of particular concern is Defendant's blatant disregard for the safety of others as he ran through red lights and stop signs, made illegal U-turns, turned left from the far right lane, drove into oncoming traffic, and sped through parking lots while fleeing from the police.  In addition, when Defendant left his vehicle to flee on foot, he left the car running such that it crashed into a police cruiser, injuring an officer.  Further, a loaded .357 revolver was found underneath Defendant, and eleven more .357 rounds loaded into two speed loaders were found on his person.  This conduct raises significant concern about Defendant's disregard for the safety of others in the community were he to be released.  Further, reflecting the seriousness of the offenses charged in the Indictment, Defendant faces a combined forty-five years in prison if found

guilty of all five.

> 2.    *The Weight of the Evidence*

The Court finds that the weight of the evidence also favors detention. The evidence against Defendant is strong.  PGPD dashboard cameras captured Defendant fleeing from officers in a twelve-minute car chase, and MPD body cameras captured Defendant's on-foot pursuit.  The ammunition seized from Defendant's person was for a .357 revolver, the same weapon that was found on the ground when officers picked Defendant up.

With regard to the charge of escape, there are documents Defendant signed acknowledging restrictions on leaving the premises of Hope Village, a Hope Village supervisor who witnessed him leaving, and Defendant's subsequent admission that he "ran away from the halfway house."

> 3.    *The History and Characteristics of Defendant*

This factor also supports detention. Section 3142 directs the Court to consider: (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law.  18 U.S.C. § 3142(g)(3)(A)–(B).

The Court recognizes that Defendant has some ties to the community. Defendant is a lifelong District of Columbia resident.  His counsel represented that he had a job at the time he left Hope Village, and that he continued to report to work even after his escape.  However, based on the evidence presented to the Court by Pretrial Services, it appears that Defendant was

7

unemployed at the time of his arrest on the instant charges.  Defendant proposes that he not be detained and instead be permitted to live at the home of his mother under the High Intensity Supervision Program.

However, Defendant has several prior convictions in Washington, D.C.   In 2015, Defendant was convicted of Assault with a Dangerous Weapon for threatening to kill a construction worker, and was sentenced to three years of incarceration.  In 2013, Defendant was convicted of possession of an unregistered firearm, unlawful possession of ammunition, and attempt to carry a pistol without a license.  While Defendant satisfactorily served his probation for his 2013 conviction, one month after his probation ended, he committed the 2015 charge for Assault with a Dangerous Weapon.

### 4. *The Danger to the Community*

The fourth factor, the danger to the community posed by Defendant, also weighs in favor of detention.  Defendant contends he does not pose a danger to the community, as the only crime of violence he is charged with resulted from his abandoned car striking the car of a police officer, which he claims was unintentional.  However, the Court is unable to ignore that the charged offenses involve Defendant's possession of a loaded firearm, despite the fact that he is legally barred from such possession. Further, Defendant's reckless flight from police officers had the potential to cause serious injury or death to innocent persons in the community.

Further, Defendant's escape in this instance demonstrates his disregard for or inability to comply with conditions which are more lenient than incarceration.  Defendant arrived at Hope Village in September 2017 to serve out the remainder of his sentence for his 2015 conviction. He was made aware that he was not to leave the premises of Hope Village, yet he showed blatant disregard for warnings not to leave the premises, and absconded less than two months after his

8

arrival.  Based on this history, the Court has little confidence that Defendant would comply with the terms of his supervision and return to Court as instructed even were  he to be released to his mother's house under the High Intensity Supervision Program.

## CONCLUSION

Based on the consideration of all the evidence and the factors set forth in section 3142(g), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of any other person or of the community if Defendant were released.  The Court also finds by a preponderance of the evidence that no condition or combination of conditions exist that would reasonably assure the Defendant's future appearance in Court. Therefore, the government's motion for pretrial detention is **GRANTED**.

## DIRECTIONS REGARDING DETENTION

Defendant is **ORDERED** remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant must be afforded reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: February 28, 2018

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE