## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | :     **Case No. 1:18-cr-28 (EGS)** |
| **v.** | : |
| | : |
| **JARRELL HARRIS,** | : |
| **Defendant.** | : |

### GOVERNMENT'S MOTION FOR PROTECTIVE ORDER
### GOVERNING BODY WORN CAMERA MATERIALS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully moves this Court for the entry of a protective order governing the production of discovery of body worn camera ("BWC") materials by the parties in the above-captioned case. The granting of this motion will facilitate the disclosure of information to the defense, while protecting the privacy rights and safety concerns of crime victims, witnesses, and other third parties. In support of its motion, the government submits the following points and authorities.[1]

### PROCEDURAL BACKGROUND

In this case, the defendant is charged with one count of Escape, in violation of 18 U.S.C. § 751(a); one count of Unlawful Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1); one count of Unlawful Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1); one count of Fleeing a Law Enforcement Officer, in violation of 50 D.C. Code § 2201.05b(b)(2); and one count of Assault with a Dangerous Weapon, in violation of 22 D.C. Code § 402. The next status is set for March 19, 2018. The defendant is held without bond in this matter.

---

[1] The Defendant opposes the Government's requested protective order.

1

## ARGUMENT

The government hereby seeks a protective order limiting the viewing, use, dissemination, and post-litigation retention of BWC materials that the government has provided, or will provide, to the defense in this case. As discussed below, the scope of the proposed protective order will narrow if BWC materials are admitted at trial, and either party may later seek a modification to this order.

### A.     The Timing of the Government's Motion

The government is filing this motion in advance of trial to facilitate the prompt disclosure of BWC materials. The Metropolitan Police Department ("MPD") General Order governing the use of BWCs provides that MPD members, whether primary, secondary, or assisting, "shall start their BWC recordings as soon as a call is initiated via radio or communication from [the Office of Unified Communications], or at the beginning of any self-initiated police action." MPD General Order SPT-302-13, Section V.A.3. The General Order enumerates a list of events during which BWCs must be activated, including, but not limited to, all calls for service and investigatory contacts, *see id. at* V.A.4, and further states that BWCs may be used to "record initial interviews of victims, complainants and witnesses." *See id. at* V.A.5. Once activated, BWCs "shall not" be deactivated until and unless the member has cleared the assignment or, in the case of an arrest, transferred custody of the arrestee to another member; concluded the citizen contact or detention; received an order to stop recording from a higher-ranking member; concluded the search; terminated the pursuit; or otherwise received permission to take a break from recording. *See id.* at V.A.11.

In light of the requirements for when and how BWCs are activated – essentially from the moment a call or contact begins until the time it has concluded for all BWC-equipped members,

whatever their role – BWC materials frequently, if not always, include personal identifying information and other sensitive information of crime victims, witnesses, defendants and other individuals who speak or interact with the police during the course of a BWC recording. This sensitive information may include the following:

      A.    Name;

      B.    Nickname;

      C.    Date of birth;

      D.    Social security or taxpayer identification number;

      E.    Driver's license or non-driver's license identification card number;

      F.    Home, work or school address;

      G.    Telephone numbers, cellular numbers, or email addresses;

      H.    Relatives, including names and contact information;

      I.    Credit card, bank, debit, or other financial-account numbers;

      J.    Medical or mental health history information; or

      K..    Usernames, user identifications, and passwords.

BWC recordings necessarily capture the personal information that members traditionally recorded in their notebooks, and much more. The only way for an AUSA to determine exactly what information is captured in a BWC recording is to view the recording, a process that takes far longer than reviewing an officer's notebook. When multiple officers are involved in an event, as is nearly always the case, the recording of each officer's BWC, capturing their entire participation in the event, must be reviewed for personal and sensitive information.

    A protective order will allow the government to provide BWC materials to the legal defense team without the substantial delay that would be required to review and redact every video

before disclosure. Further, a protective order will ensure that the government can comply with these disclosure obligations while accommodating the privacy rights and safety concerns of individuals who appear in BWC materials.

The proposed protective order accomplishes this goal in part by imposing particular responsibilities and restrictions on the legal defense team. The legal defense team includes defense counsel (defined as counsel of record in this case, including any subsequent post-trial or appellate counsel), the defense counsel's direct supervisor, and investigators, paralegals, or support staff members, who are working under the direction of the defense counsel. The legal defense team does not include the defendant, the defendant's family members, or friends or known associates of the defendant.

## B.    Legal Standard

Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Where the government is seeking a protective order, it has the burden of showing good cause. *See United States v. Fallen*, 498 F.2d 172, 175 (8th Cir. 1974); *United States v. Isa*, 413 F.2d 244, 248 (7th Cir. 1969). In doing so, the court should seek to ensure that disclosure of discovery materials to a defendant "involve[s] a minimum hazard to others." *Alderman v. United States,* 394 U.S. 165, 185 (1969). "Protective orders in criminal cases are not uncommon," and this Court has "vast" discretion to grant protective orders, and should exercise that discretion to "assure that a defendant's right to a fair trial [is] not overridden by the confidentiality and privacy interests of others." *United States v. O'Keefe*, No. 06-0249 (PLF), 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) (citing *CHARLES ALAN WRIGHT, 2 Federal Practice and Procedure* § 258 (3d ed. 2000); *United States v. Libby*, 453 F. Supp. 2d 35, 37 (D.D.C. 2006)). However, "the trial court can and

4

should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969); *accord United States v. Smith,* 985 F.Supp.2d 506, 520-521 (S.D.N.Y. 2013).

Good cause for a protective order requires a particularized, specific showing; however, the "nature of the showing of particularity… depends upon the nature or type of protective order at issue." *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012). Further, this particularized showing can be made by *either* "specific examples *or* articulated reasoning." *United States v. Wecht,* 484 F.3d 194, 211 (3rd Cir. 2007) (emphasis added). Protective orders can vary "'from true blanket orders (everything is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific information after a specific finding of need.'" *Id.* (quoting *Poliquin v. Garden Way, inc.*, 989 F.2d 527, 532 (1st Cir. 1993)). The showing required for a blanket protective order is not the same as the particularized showing required for a specific protective order. *See id.* at 53. A blanket protective order may be used to expedite the flow of discovery that would otherwise be slowed by time-consuming processes like document review. *Id.* at 53, n.11. Protective orders may later be modified under the same good cause standard relied on for imposition of the order. *Id.* at 53.

In the context of a criminal case, courts have established a balancing test to evaluate whether the court should exercise its discretion to grant a protective order. When examining a request for a protective order under Rule 16(d)(1), the court should consider: (1) whether dissemination of the discovery materials without a protective order would pose a hazard to others; (2) whether the defendant would be prejudiced by the protective order; and (3) whether the public's interest outweighs the harm the disclosure would cause. *United States v. Smith*, 985 F. Supp. 2d

506, 523-24 (S.D.N.Y. 2013); *United States v. Carriles*, 654 F. Supp. 2d 557, 566 (W.D. Tex. 2009).

## 1. There is Good Cause for the Proposed Protective Order

The government seeks a protective order regarding the BWC materials in this case in order to facilitate the prompt exchange of BWC materials to the defense, while protecting the privacy rights and safety concerns of crime victims, witnesses, and third parties who appear in BWC footage. The proposed protective order will limit the viewing, use, dissemination and retention of BWC materials that contain personal identifying information and other sensitive information. However, the proposed protective order also provides the legal defense team with early access to these materials, and the flexibility to use those materials to prepare for trial.

The balance the government seeks to strike through this protective order is consistent with the balance that the District of Columbia has established in its laws and regulations regarding BWC footage and victims' rights. The government's proposed protective order reflects the priorities of D.C. Municipal Regulation Title 24 Section 3902.5(a)(1)-(5), which limits a subject's access to BWC footage that would "violate the individual privacy rights of any other subject" or "jeopardize the safety of another subject." The protective order also takes into consideration the crime victims' bill of rights, which provides that a crime victim has the right to:

(1) [b]e treated with fairness and with respect to the victim's privacy;

(2) [b]e reasonably protected from the accused offender.

18 U.S.C. §§ 3771(a)(8) and 3771(a)(1).

As described above, BWC materials routinely contain personal identifying information and other sensitive information of crime victims, witnesses, and third parties. The dissemination of such information would violate the privacy rights of these individuals and raise potential safety

6

concerns in the absence of a protective order. This articulated reasoning provides good cause for the Court to issue the narrowly-tailored protective order governing the disclosure of BWC materials that the government has proposed.

### 2. The Proposed Protective Order does not Prejudice the Defendant

The defendant suffers no prejudice by the proposed protective order. The proposed protective order allows the defendant and the legal defense team to use BWC materials for any and all case-related purposes, including trial and appeal. Indeed, the proposed order expressly permits the legal defense team to disclose non-sensitive BWC materials to the defendant and any other court-authorized persons in connection with the defense of this case.

However, the proposed protective order balances that disclosure with restrictions on the further dissemination, use, viewing, and retention of BWC materials. First, the proposed order precludes disclosure of BWC materials directly or indirectly to any other person, entity, or public forum, beyond the legal defense team, the defendant, and court-authorized persons. Second, the protective order permits copying or electronically reproducing BWC materials as deemed necessary for use in connection with this case, but not for any other purpose. Defense counsel is required to maintain such physical or electronic copies in a secured environment that limits access to members of the legal defense team. Third, defense counsel must ensure that neither the defendant, nor other court-authorized persons, views or hears BWC footage that includes personal identity or highly sensitive information regarding a witness as set forth in the proposed order. Fourth, defense counsel must ensure that the defendant and other court-authorized viewers do not photograph, take screen shots, or otherwise duplicate the BWC materials. Fifth, defense counsel must provide members of the legal defense team, the defendant, and any other court-authorized person with a copy of the protective order before providing them with access to, or permitting

them to view, BWC materials.  Sixth, the protective order sets forth procedures for the viewing of BWC materials if the defendant is incarcerated by the District of Columbia Department of Corrections. Finally, the proposed order provides that following a conviction, BWC materials may be maintained in defense counsel's case file in a secured manner. Either party can seek a modification of the protective order after they have had an opportunity to review and analyze the BWC materials.

### 3.      The Proposed Protective Order does not Unduly Restrict the Public's Access to BWC Materials

The public's access to information regarding BWC materials is not compromised by the proposed protective order. Public access to BWC materials is properly obtained through the procedures set forth in D.C. laws and regulations, including MPD General Orders. *See, e.g.*, Public Access to Body-Worn Camera Video Amendments Act of 2015,  2016 D.C. Laws 21-83, Act 21-265 (D.C. 2016). Criminal discovery should not be used as a means to circumvent those laws and regulations. Indeed, criminal discovery is traditionally a private process designed to assist the parties in their preparation for trial. *See Smith*, 985 F. Supp. 2d at 515-516. Allowing public access to discovery materials may undermine the goal of encouraging the disclosure of information and materials to avoid unnecessary surprise and level the playing field at trial. *Id.* at 520. There is no general right of public access to discovery materials. *Id.* at 519. *See also, Mokhiber v. Davis*, 537 A.2d 1100, 1109 (D.C. 1988) (holding "there is no public right of access under the first amendment, let alone at common law, to discovery materials . . .").

Finally, the proposed protective order automatically excludes BWC materials that are received as evidence at trial in this or any other case, or to BWC materials that otherwise become part of the public record, such as materials that are publicly released by United States Attorney's Office for the District of Columbia, or the government of the District of Columbia, including the

Metropolitan Police Department. Thus, the government's proposed protective order does not limit the public's access to information that has been determined by the parties and this Court to be accurate and admissible.

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court issue the proposed protective order regarding the disclosure of any BWC materials in this case.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By:

Dineen A. Baker
Assistant United States Attorney
D.C. Bar No. 487820
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6954
*dineen.baker@usdoj.gov*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via ECF on counsel for Defendant, Louie Itoh, on this 19th day of March, 2018.

Dineen A. Baker
Assistant United States Attorney

9